FILED
2020 Nov-17  PM 12:15
U.S. DISTRICT COURT
N.D. OF ALABAMA



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **MADISON LOWRY, and the collective action class of similarly situated employees described herein,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **CIVIL ACTION NO.:** _____ |
| **vs.** | ) ) | |
| **THE PONY BAMA, LLC; and CHARLES G. WESTLUND,** | ) ) ) | **JURY DEMAND** |
| **Defendants.** | ) | |

## COLLECTIVE ACTION COMPLAINT

Madison Lowry states the following as her Complaint against The Pony Bama, LLC ("The Pony Bama") and Charles G. "Jerry" Westlund, on behalf of similarly situated employees described herein.

## I.  INTRODUCTION

Madison Lowry was an exotic dancer/entertainer at an establishment known as The Pony in Madison County, Alabama.  This is a claim brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* ["FLSA"] for failure to pay a minimum wage, and for illegally confiscating monies earned from the performance of exotic dances, however they are characterized.

Defendants willfully engaged in a pattern, policy and practice of unlawful conduct for the actions alleged in this Complaint. Defendants willfully failed to pay Plaintiff and the class described herein the minimum wage they were entitled to under applicable federal laws. Additionally, Defendants unlawfully required dancers to disgorge monies given to them by patrons, effectively forcing them to split them with non-tipped employees, including bouncers and disc jockeys.

Plaintiff brings this action on behalf of herself and other similarly situated employees seeking damages, back pay, restitution, liquidated damages, civil penalties, prejudgment interest, reasonable attorneys' fees and costs, and any and all other relief that the Court deems just, reasonable and equitable in the circumstances.

## II.  <u>JURISDICTION AND VENUE</u>

1.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

2.      The Pony's annual sales exceed $500,000, and it employs more than two persons in commerce, so the FLSA applies.  29 U.S.C. § (s)(1)(A)(i)-(ii).

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

### III.   THE PARTIES

4.      Madison Lowry is a resident of Madison County, Alabama, and is over the age of nineteen (19).  Madison Lowry worked as an exotic dancer at The Pony from December 9, 2016 to May 22, 2020.

5.      The Pony Bama, LLC, is an Alabama Limited Liability Company operating two nightclubs in Madison County, Alabama, called The Pony, and The Pony Too.  Both of these clubs feature exotic dancing, and are managed, and are operated jointly, as set forth below.  The Pony Bama has been operated by The Pony Bama, LLC, since December of 2019.  The Pony Bama, LLC, acquired the former Jimmy's Lounge location in Madison, Alabama, and operates it as The Pony Too.

6.      Charles G. "Jerry" Westlund is an individual, over the age of nineteen (19) years, residing in a State other than Alabama, who at all pertinent times directed the terms and conditions of employment for exotic dancers at The Pony and The Pony Too.

### IV.   FACTUAL ALLEGATIONS

#### A.      Facts Relating to The Pony Bama and The Pony Too Considered as a Single Employer.

7.      The Pony Bama, LLC, has operated its original location at 141 Ware Drive NE, in Huntsville, Alabama since at least 2009.  In approximately January of 2020, it began operating The Pony Too at its location located at 8700 Highway 72,

in Madison, Alabama.  Prior to December of 2019, another nightclub featuring exotic dancing, known as Jimmy's Lounge, operated at this location.

8.     While operating at two separate locations, as a matter or practice, both clubs operate under The Pony Bama, LLC umbrella as one business entity, so as to be considered joint employers.

9.     There is no separate corporate entity responsible for operating The Pony Too, as opposed to The Pony Bama.  The two locations hold business licenses out of the same address.

10.     The two locations are managed by the same management team, and the same management team, headed by Mr. Westlund, makes policy as it relates to exotic dancers at both locations.

11.     The same managerial policies are implemented by Mr. Westlund under The Pony Bama, LLC corporate umbrella, at both locations; including the decisions to hire, discipline, and terminate exotic dancers.

12.     The business operations and management of The Pony Bama and The Pony Too were and are so intertwined that they are considered joint employers as defined in the FLSA Regulations, 29 C.F.R. § 791.2 et seq.

13.     Liability for joint employers is joint and several, meaning that even if The Pony Bama, LLC, and The Pony Too are considered separately, they are jointly and severally responsible for the violations of the FLSA pled herein, regardless of

whether the exotic dancing work was performed at The Pony Bama or The Pony Too.

**B.      Facts Relating To Liability of Charles G. "Jerry" Westlund.**

14.     Charles G. "Jerry" Westlund, at all times pertinent to the case, dominated the operation of The Pony Bama and The Pony Too.  Charles G. "Jerry" Westlund set and enforced all policies with regard to the terms and conditions of employment for exotic dancers.

15.     Charles G. "Jerry" Westlund set each policy related below regarding work hours, tip-outs, payment for private dances, and any other requirements of exotic dancers at The Pony Bama and The Pony Too.

16.     The corporate entities have been largely disregarded as Mr. Westlund regularly took large payments from the businesses.

17.     Mr. Westlund has been at all times relevant to this action in a position to control the work activities of Ms. Lowry and the other exotic dancers at The Pony Bama and The Pony Too.  Mr. Westlund at all times had the power to, and did on occasion, hire and fire exotic dancers at The Pony Bama and The Pony Too.  Mr. Westlund, at all pertinent times, made the management decisions regarding exotic dancers in implementing and enforcing the hours, work schedules, and working conditions of the exotic dancers outlined herein.

18.     Mr. Westlund determined how exotic dancers such as Ms. Lowry would be paid, and how tip-outs and dance fees would be split and accounted for.  Finally, Mr. Westlund maintained what employment records were kept at The Pony Bama and The Pony Too.

19.     In short, Mr. Westlund directed all of the terms and conditions of Ms. Lowry's employment.

C.     **Facts Relating To Working Conditions For Exotic Dancers at The Pony Bama and The Pony Too.**

20.     Plaintiff and the class described below have been intentionally misclassified by The Pony Bama and The Pony Too as independent contractors.

21.     Plaintiffs have not been paid a minimum wage by The Pony Bama and The Pony Too. In fact, Plaintiffs have not been paid any hourly wages by Defendants.  All monies paid to the dancers come directly from the patrons at the Clubs, as described herein.

22.     No exception to the FLSA applies to Plaintiffs.

23.     At all relevant times, Defendants directly and indirectly exercised significant control over the wages, hours, and working conditions of Plaintiffs.

24.     Plaintiffs incurred financial loss, injury and damage as a result of the business practices of Defendants in misclassifying exotic dancers as independent contractors and failing to pay a minimum wage.

25.    Plaintiffs generated their income solely through the monies received from customers for the performance of exotic dances.

26.    All monies that Plaintiffs received from customers in the performance of exotic dances were, as described below, either tips or service fees.  In either case, as described below, Defendants had no right to keep any portion of the monies paid. These payments were given by patrons directly to and/or solely for services performed by Plaintiffs and therefore, if considered tips, belong to Plaintiffs, not Defendants.

27.    Alternatively, the payments Plaintiffs received from patrons in relation to exotic dances were service charges not taken into Defendant's gross receipts, and then paid out to Plaintiffs.

28.    Plaintiffs were considered tipped employees, as they were engaged in an occupation in which they customarily and regularly receive more than $30 a month in tips, if dance fees are considered tips.  No tip credits offsetting any minimum wages due, however, are permitted.  Therefore, Plaintiffs are entitled to: (i) minimum wages for all work performed; and (ii) the full amount of any monies given to them by customers for the performance of exotic dances.

29.    Defendants' misclassification of Plaintiffs was specifically designed to deny Plaintiffs' fundamental rights as employees to receive minimum wages, to

demand and retain portions of tips paid by customers, and to enhance Defendants' profit margin at the expense of Ms. Lowry and the other dancers.

30.     The  misclassification of Plaintiffs was willful.

31.     Defendants knew or should have known that Plaintiffs were improperly misclassified as independent contractors.

32.     The determining factor as to whether a worker is an employee or independent contractor under the FLSA is not the workers' or employees' election, subjective intent, or any contract.  Rutherford FoodCorp. v. McComb, 331 U.S. 722, 727 (1947).  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test.   Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for themselves and truly independent, or rather is economically dependent upon finding employment in others.  In this case, dependent upon The Pony Bama and The Pony Too to make a living.

33.     Workers cannot "elect" to be treated as employees or independent contractors under threat of adverse treatment.  Nor can workers agree to be paid less than the minimum wage. Despite this, Defendants' unfairly, unlawfully, fraudulently and unconscionably coerced Plaintiffs to waive their statutory rights and elect to be treated as independent contractors.

34.     Under the applicable test, courts utilize several factors to determine economic dependence and employment status. They are: (1) the degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

35.     The totality of circumstances surrounding the employment relationship between Defendants and Plaintiffs establishes economic dependence by Plaintiffs on Defendants.   Here, Plaintiffs were not in business for themselves and truly independent, but rather were economically dependent upon finding employment with Defendants.  Plaintiffs did not engage in an occupation or business distinct from that of Defendants.  To the contrary, Plaintiff and the other dancers were and are the basis for the business of The Pony Bama and The Pony Too.  Without exotic dancers, The Pony Bama and The Pony Too cannot exist as "Gentlemen's Clubs."

36.     The Pony Bama and The Pony Too obtain the customers who seek out exotic dance entertainment and provides the workers who conduct the exotic dance services.  Defendants retain pervasive control over the Clubs' operations as a whole, and Plaintiff and the other dancers' duties are an integral part of those operations.

### D.   __Degree of Control Exercised by Defendant.__

37.   Plaintiff and the other dancers do not exert control over any meaningful part of business operations, and do not stand as separate economic entities from The Pony Bama and The Pony Too.  Defendants exercise control over all aspects of the working relationship with Plaintiff and the other dancers at the Clubs.

38.   Plaintiffs' economic status is inextricably linked to conditions over which The Pony Bama and The Pony Too have complete control, including but not limited to, advertising and promotion, the atmosphere and surroundings at the club, the flow of customers into the club, and the customer volume.

39.   The Pony Bama and The Pony Too employ guidelines and rules dictating the way in which Plaintiff and the other dancers must conduct themselves while working.  These guidelines include, but are not limited to:

> a.   Requiring the dancers to report for work at specific times, and stay specific hours.  If the dancers left early, they would be forced to pay the club extra;
> b.   Requiring the payment of a "tip-out" for each dancer for each shift worked;
> c.   Requiring a particular number of shifts per week;
> d.   Setting the prices for private dances;
> e.   Confiscating some of the money earned by the dancers for private dances;
> f.   Controlling when the dancers will be on stage; and
> g.   Approval of wardrobe.

40.   Defendants control the conduct of dancers while at work, including how dances are to be performed, how often the dancers are to be on stage performing,

and requiring dancers to mingle with patrons in a manner which supports Defendants' general business plan, but to no benefit of the dancers.

41.     Defendants require dancers to literally pay management a fee to work there.  Each dancer had to pay to the Club, at some point during her shift, a sum of money, usually $20.00, just to work that shift.  This payment is commonly referred to as a "tip-out."  The amounts sometimes fluctuated,  increased at random periods of time.  If the tip-out was not paid, the dancer would be fined, and eventually fired.

42.     Defendants require that shifts commence at particular times for a minimum number of hours.  For example, Defendants require dancers to report to management at the beginning and end of each shift.  If a dancer is late or absent for a shift or does not appear timely for her dance on stage, a dancer is subject to a monetary penalty.

43.     Dancers are required to complete the entirety of their shifts, and are not permitted to leave early without penalty.  In the event the dancer leaves a shift early, she is subjected to a monetary fine.

44.     One element of a dancer's job is performing private exotic dances in a VIP room.  Defendants, not the dancers, establish a minimum rate per song that dancers must collect from patrons when performing exotic dances in the VIP room. Defendants then impose a charge, usually $5.00, that each dancer must kick back to the Clubs for each private dance performed.  Each dancer must "tip-out" the required

payment at the end of each dance.  The "tip-out" dance charges would increase as the time a patron spent in the VIP room increased.

**E.     Facts Negating Skill and Initiative of a Person in Business for Themselves.**

45.     Plaintiffs did not exercise the skill and initiative of a person in business for herself.

46.     Plaintiffs were not required to have any specialized or unusual skills to work, and the skills utilized in performing exotic dances are commensurate with those exercised by ordinary people.

47.     Plaintiffs did not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of independent contractors as they owned no enterprise, nor did they maintain separate business structures or facilities.

48.     Plaintiffs had no control over customers, nor did they actively participate in any efforts to increase the client base, profit, or to improve business in any capacity at The Pony Bama and The Pony Too.

49.     A dancer's own initiative is limited to wardrobe, which is itself subject to final approval by Defendants, and how provocatively to dance, actions which are consistent with the status of an employee as opposed to an independent contractor.

50.     Plaintiffs were not permitted to hire or subcontract other qualified individuals to provide additional dances to patrons, and increase their revenue, as an independent contractor in business for themselves would have the authority to do.

**F.      Facts Establishing Relative Investment.**

51.     Plaintiffs' relative investment is minor when compared to the investment made by The Pony Bama and The Pony Too.

52.     Plaintiffs made no financial investment in facilities, advertising, maintenance, sound system and lights, food, beverage, and other inventory.  All capital investment and risk belongs to Defendants.

53.     Plaintiffs' investment is limited to expenditures on wardrobe and make-up.  Absent Defendants' investment and provision of the club work environment, Plaintiffs would not have earned anything.

**G.      Facts Establishing Opportunity for Profit and Loss.**

54.     Defendants manage all aspects of the business operation, including but not limited to attracting investors, maintaining the premises, establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff.  Defendants provide all necessary capital to open and operate the business.

55.     Plaintiffs have no responsibility for any aspect of The Pony Bama and The Pony Too's ongoing business risk.  Defendants secure all financing, the acquisition and/or lease of the physical facility and equipment, inventory, the

payment of wages (for managers, bartenders, doormen, and waitresses).  The Pony Bama and The Pony Too alone are responsible for securing all necessary and appropriate insurance and licenses.  Defendants set the minimum dance, tip, and other tip amounts to be collected from patrons, and establish the tip splitting policy for dances performed in the VIP rooms.

**H.      Facts Establishing Permanency.**

56.      Plaintiff worked fairly regularly at The Pony Bama, as alleged above. Plaintiff worked approximately four (4) shifts per week.

**I.      Facts Establishing Plaintiffs are Integral Part of Employer's Business.**

57.      Exotic dancers are critical to the success of The Pony Bama and The Pony Too and the Clubs' very operation is wholly dependent on the existence of exotic dances being provided by dancers for patrons.

58.      The primary "product" or "good" The Pony Bama and The Pony Too are in business to sell consists of dances performed by the exotic dancers.  Other goods sold by Defendants include drinks and food, which are served to patrons by waitresses, shot girls, and bartenders.

59.      Plaintiffs have been misclassified as independent contractors and should have been paid minimum wages at all times they worked.

**J.**   <u>**Facts Establishing that Defendants' Acts Were Willful.**</u>

60.   All of the actions described herein were willful, intentional and not the result of mistake or inadvertence.

61.   Defendants are and have been aware, or should be aware, that the FLSA applies to its business at all relevant times and that under the economic realities test applicable to determining employment status under those laws the dancers were misclassified as independent contractors.

62.   Exotic dancers working under conditions similar to those employed at The Pony Bama and The Pony Too have been determined to be employees under the wage and hour laws, not independent contractors.

63.   Defendants have been aware, and had actual or constructive notice, that applicable law rendered all tips given to class members by patrons when working were Plaintiffs' sole property, rendering its tip-share, and tip-out scheme unlawful.

64.   Despite this notice of their violations, Defendants intentionally chose to continue to misclassify dancers like Plaintiff, withhold payment of minimum wages, and require dancers to split their tips in an effort to enhance their profits. Such conduct and agreements were intentional, unlawful, fraudulent, deceptive, unfair and contrary to public policy.

65.   Ms. Lowry was employed by The Pony Bama as an exotic dancer from December of 2016 to May of 2020.

66.     Ms. Lowry was never paid an hourly wage, at all, by Defendants.

67.     Ms. Lowry had to pay Defendants $5.00 out of every $25.00 she received for private dances.  Ms. Lowry continued to have to pay a tip-out every time she worked at The Pony Bama of approximately $20.00, although the amount varied.  She also continued to have to pay the disc jockey out of the money she collected for stage dances, and for private dances, and had to pay for an automated disc jockey through higher "tip-outs" or "hours fees."

## V.   INJURY AND DAMAGE

68.     Plaintiffs were harmed, and incurred damage and financial loss as a result of The Pony Bama and The Pony Too's conduct complained of herein.

69.     Plaintiffs were entitled to minimum wages and to retain all of the private dance tips and other tips they were given by patrons.  By failing to pay Plaintiffs minimum wages and interfering with their right to retain all of the dance tips and other tips they were given by patrons, Defendants injured Plaintiffs, causing them financial loss, harm, injury and damage.

## VI.   COLLECTIVE ACTION ALLEGATIONS

70.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of all similarly situated current and former exotic dancers working at The Pony Bama or The Pony Too in Madison County, Alabama, at any time within three years of the filing of this action.

71.   Excluded from the class are all the Defendants' executives, administrators, professional employees, and outside sales persons.

72.   A collective action under the FLSA is appropriate because under 29 U.S.C. § 216(b), the workers described as parties to the Complaint are similarly situated to the named Plaintiff.

73.   The workers Plaintiff seeks to represent in this case include:

> All exotic dancers who worked at either The Pony Bama or The Pony Too in Madison County, Alabama, at any time within three years of the filing of this action.

74.   The putative class members are similarly situated to the named Plaintiff because they worked in the same positions, were subjected to the same unlawful practices, policies, or plans, and their claims are based upon the same factual and legal theories.

75.   The working relationships between Defendants and every putative class member are exactly the same.  The key legal issue to the collective action, i.e., whether Defendants' classification policy and practice violated the FLSA, does not vary substantially from class member to class member.

76.   Plaintiff estimates that the putative class, including both current and former workers over the relevant period, will include over 50 members.  The precise

number of the class members should be readily discernible from a review of Defendants' records.

## VII.   CAUSES OF ACTION

### COUNT I - VIOLATION OF THE FLSA
### (Failure to Pay Statutory Minimum Wages Against All Defendants)

77.    Plaintiffs hereby incorporate all of the preceding paragraphs as if fully stated herein.

78.    Charles G. "Jerry" Westlund, as described above, because of the control he exercised over the dancers, is an "employer" as that term is defined by 29 U.S.C. § 203(d), and is thus individually liable.  Each claim under this Court is made against Mr. Westlund, individually, as well as against The Pony Bama, LLC.

79.    This claim arises out of Defendants' willful violation of the Fair Labor Standards Acts, 29 U.S.C. Sec. 201, et seq., for failure to pay a minimum wage to Plaintiffs to which they were entitled.

80.    At all relevant times, Defendants employed Plaintiffs within the meaning of the FLSA.

81.    At all relevant times, Defendants have been engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 201.

82.    At all relevant times, The Pony Bama and The Pony Too were enterprises whose annual business income was in excess of $500,000, pursuant to 29 U.S.C. § 203(5)(1)(A)(ii).

83.    The minimum wage provisions of the FLSA, 29 U.S.C. 201 et seq., apply to The Pony Bama and The Pony Too, and protect Plaintiffs.

84.    Pursuant to 29 U.S.C. § 206, Plaintiffs were and are entitled to be compensated at the rate of $7.25 per hour.

85.    29 U.S.C. § 207(a) provides in pertinent part:

> ... no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

86.    Defendants failed to pay Plaintiffs the minimum wage set forth in 29 U.S.C. § 206, or any wages whatsoever.

87.    Defendants failed to pay Plaintiffs a minimum wage throughout the relevant time period because Defendants intentionally misclassified them as independent contractors.

88.    The amount paid to Plaintiffs by patrons in relation to private dances or other services performed were either service fees or tips, not wages.  In either case, they were improperly kept by Defendants.

89.    The private dance fees are paid directly to the dancers by customers, not to the Defendants.  Thus, they cannot be wages.

90.    Courts have classified private dance fees paid by customers of exotic dance clubs as either tips or service fees.   In either case, Defendants cannot confiscate the private dance fees and they are due to be returned to Plaintiffs.  If the private dance fees are considered tips, then The Pony Bama and The Pony Too have no right to them because under the FLSA an employer may not keep any portion of employees' tips . . ."  29 U.S.C. § 203(m)(2)(B).

91.    It could be argued that the private dance fees are service fees paid to the establishment.  However, in such a case, Defendants still would not be able to retain them, nor would they be able to claim such confiscated private dance fees as a credit against their minimum wage obligation.

92.    In order to take the private dance fees as a credit, Defendants would have to actually pay Ms. Lowry and the other dancers, and then it would have to have both included in private dance fees in the gross revenues of the company, and then pay them out to the dancers.  This was not done.

93.    As a result, under any circumstance the amounts paid to Plaintiff by patrons in relation to private table dances cannot be used to offset The Pony Bama and The Pony Too's obligation to pay Ms. Lowry's minimum wages due.  See Hart v. Rick's Cabaret, Int'l, 2013 U.S. Dist Lexis 129130 (S.D.N.Y. Sept. 10, 2013) e.g., Reich v. ABC/York-Estes Corp., 157 F.R.D. 668, 680 (N.D.Ill. 1994), rev'd on other grounds, 64 F.3d 316 (7th Cir. 1995); Reich v. ABC/York-Estes Corp., 1997 WL 264379 at *5-7 (N.D.Ill. 1997).

94.    Further, no tip credit applies to reduce or offset any minimum wages due.  The FLSA only permits an employer to allocate an employee's tips to satisfy a portion of the statutory minimum wage requirement provided that the following conditions are satisfied: (1) the employer must inform the tipped employees of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and (2) tipped employees must retain all the tips received except those tips included in a tipping pool among employees who customarily receive tips.  29 U.S.C. § 203(m).

95.    Neither of these conditions was satisfied.  Defendants did not inform Ms. Lowry of the provision of § 3(m) of the FLSA, 29 U.S.C. § 203(m), and Plaintiff did not retain all the tips received.

96.    The Pony Bama did not notify Ms. Lowry that her dance fees were being used to reduce the minimum wages otherwise due under FLSA's tip credit provisions and that they were still due the reduced minimum wage for tipped

employees because Defendants maintained as a business strategy that Ms. Lowry and the other dancers were not due a minimum wage due to the classification as independent contractors.

97.   The Pony Bama and The Pony Too's requirement that Ms. Lowry and the other dancers split their tips, and pay Defendants a portion of all dance tips and to pay a "tip-out" to other employees who do not customarily receive tips, such as bouncers, managers and disc jockeys was not part of a legally permissible or valid tip pooling or tip sharing arrangement.

98.   Based on the foregoing, Plaintiffs are entitled to the full statutory minimum wages set forth in 29 U.S.C. §§ 206 and 207 for all periods in which Plaintiffs worked for Defendants, along with all applicable penalties, liquidated damages, and other relief.

99.   Defendants' conduct in misclassifying Plaintiffs as independent contractors was intentional and willful and done to avoid paying minimum wages and the other benefits that Plaintiffs were legally entitled to receive.

100.   Plaintiffs seek damages in the amount of their unpaid wages, liquidated damages as provided by 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper.

101.   12 U.S.C. § 211(c) provides in pertinent part:

( c )   Records

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

102.   29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

103.   To the extent The Pony Bama and The Pony Too failed to maintain all records required by the aforementioned statutes and regulations, and failed to furnish Plaintiffs comprehensive statements showing the hours that they worked during the relevant time period, it also violated the aforementioned laws causing Plaintiffs' damages.

104.   When the employer fails to keep accurate records of the hours worked by its employees, the rule in <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687-688 66 St. Ct. 1187 (1946) is controlling.  That rule states:

...where the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he

23

> proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with the evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

105.   The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with ... the Act." Id.

106.   Based on the foregoing, Plaintiffs seek unpaid minimum wages at the required legal rate for all working hours during the relevant time period, back pay, restitution, damages, reimbursement of any base rent and tip-splits, liquidated damages, prejudgment interest calculated at the highest legal rate, attorneys' fees and costs, and all other costs, penalties and other relief allowed by law.

# **RELIEF REQUESTED**

WHEREFORE, Plaintiff, prays for an order for relief as follows:

a.      That the case be certified as a collective action;

b.      That notice be sent to similarly situated employees within the statutory period, and that those similarly situated employees be given the opportunity to opt into this action.

c.      That Defendants be found liable to Plaintiff;

d.      For a declaration that Defendants violated the rights of Plaintiff under applicable law;

e.      For nominal damages;

f.      For compensatory and actual damages;

g.      For restitution of all monies due Plaintiff and disgorged profits from the unlawful business practices of Defendant;

h.      For all back pay, unpaid wages, and a refund of all tips, "rent", tip-outs, fines and other amounts paid by Plaintiff;

i.      For all statutory damages, liquidated damages, civil penalties, and/or other relief allowed by federal wage and hour statutes and regulations and/or other laws;

j.      For accrued interest;

k.      For costs of suit and expenses incurred herein, including reasonable attorneys' fees allowed under any relevant provision of law or equity, including the FLSA; and

l.      For any and all other relief that the Court may deem just, proper and equitable in the circumstances.

## **JURY DEMAND**

Plaintiff reserves her right to and hereby requests a trial by jury.

Respectfully submitted,

/s/ Brian M. Clark
Brian Clark
Attorney for Plaintiff

**OF COUNSEL:**
Wiggins Childs Pantazis Fisher & Goldfarb, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone:  (205) 314-0500
Facsimile:  (205) 254-1500
Email:  bclark@wigginschilds.com


SERVE DEFENDANTS AT THE FOLLOWING:

The Pony Bama, LLC
c/o Registered Agent
Brian Keith
141 Ware Drive NE
Huntsville, Alabama  35811

Charles G. Westlund
6 Sawgrass Lane
Brentwood, Tennessee  37027-8972